This litigation stems from an October 21, 1995 motor vehicle collision between the automobile respectively operated and occupied by plaintiffs-appellants Christopher Lathan and Marilyn Lathan and the automobile operated by John Hunsicker.[1] The plaintiffs filed their complaint for personal injuries against the defendant; the defendant answered and filed a counterclaim for property damage against Christopher Lathan.
The case proceeded to trial, at which time the jury returned defense verdicts on the claims of Christopher Lathan and Marilyn Lathan. The jury further returned a defense verdict on the defendant's counterclaim in the amount of $500.00 and, after finding that Hunsicker was 25% at fault for the collision, the court entered judgment for the defendant in the amount of $375.00. The plaintiffs' appeal contests the verdict returned against Marilyn Lathan and the admission of certain testimony from the administratrix of Hunsicker's estate. Because the plaintiffs' arguments are not well taken, we affirm the judgment.
The evidence at trial showed that, at or around 11:00 a.m. on the day of the incident, the plaintiffs were driving southbound on W. 117th Street in Cleveland, Ohio when they observed a gasoline service station located on the northeast corner where Western Avenue intersected with W. 117th Street only from the east. Northbound and southbound traffic on W. 117th Street consisted of two through lanes in each direction. Shortly before the Western Avenue intersection, the center lane for southbound traffic divides, so that one lane remained a through lane for southbound travel while the other lane was designated as a left-turn-only lane. The intersection was controlled by traffic signals. Where the gas station fronted W. 117th Street, two separate apron driveways permitted ingress and egress, in the same area as the southbound left-turn-only lane.
The plaintiffs testified their vehicle was in the southbound lane closest to the center of the street, where they waited for a northbound vehicle to proceed past them. At some point, Christopher Lathan activated his left-turn signal to signify the intention to turn left into the gas station. According to the plaintiffs, they began their left turn to enter the gas station when John Hunsicker, whose vehicle was immediately behind the plaintiffs' vehicle, pulled his car to the left of the plaintiffs' car to squeeze past them. The right front part of Hunsicker's car struck the driver's side door of the Lathans' car. Both vehicles proceeded into the gas station lot to exchange information.
The defendant's case was based, in part, on testimony from Hunsicker's mother, who lived with her son in a house located a short distance from the accident scene. She related that Hunsicker told her how the accident occurred when he arrived home shortly afterwards. He said he was driving southbound on W. 117th
Street intending to turn left at the Western Avenue intersection when the plaintiffs' car abruptly cut left and turned into his lane. Hunsicker said he honked his horn and turned to try to avoid the collision but was unable to do so. After exchanging information, Hunsicker drove home. Within several days, Hunsicker also drew a diagram of the accident.
In filing this action, the plaintiffs sought recovery for their bodily injuries. The defendant disputed the plaintiffs' claims as to both liability and damages and additionally asserted a counterclaim for the property damage to Hunsicker's car. Upon trial, the jury returned general verdicts in favor of the defendant and against the plaintiffs on each of the plaintiffs' individual claims. The jury also found in favor of the defendant on the counterclaim, awarding damages in the amount of $500.00 and apportioning Hunsicker's comparative fault at 25%. The court subsequently entered judgment for the defendant in the amount of $375.00 and denied the plaintiffs' post-judgment motion for judgment notwithstanding the verdict, new trial or further jury deliberations.
In this appeal, the plaintiffs' first and third assignments of error are closely related and will therefore be addressed jointly.
They assert:
 I. THE TRIAL COURT COMMITTED PLAIN ERROR BY ENTERING JUDGMENT ON THE JURY'S VERDICT BECAUSE THE JURY FAILED TO DETERMINE THE AMOUNT OF DAMAGES SUFFERED BY APPELLANT MARILYN LATHAN EVEN THOUGH DEFENDANT JOHN HUNSICKER WAS FOUND TO BE 25% AT FAULT.
 III. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY DENYING APPELLANT MARILYN LATHAN'S MOTION FOR NEW TRIAL AND/OR MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT BECAUSE THE JURY FAILED TO DETERMINE THE AMOUNT OF DAMAGES SUFFERED BY MARILYN LATHAN.
The plaintiffs contend that because Marilyn Lathan was a fault-free passenger and the jury determined John Hunsicker's comparative fault at 25% when awarding the defense verdict on the defendant's counterclaim, it follows that Marilyn Lathan was entitled to a corresponding judgment against the defendant. The jury returned general verdicts against both plaintiffs in accordance with the court's jury instructions and therefore did not quantify damages for either plaintiff, nor did the jury apportion liability between Hunsicker and Christopher Lathan on those claims. The plaintiffs did not object or otherwise question whether the verdicts were inconsistent before the jury was discharged. They nevertheless argue that Marilyn Lathan was entitled to judgment as a matter of law and that the court committed plain error either by failing to direct this jury to quantify Marilyn Lathan's damages before accepting the jury's verdict and entering judgment thereon or by failing to order a new trial. These assignments of error are not well taken.
The plaintiffs acknowledge that the plain error doctrine is used sparingly in civil cases. In Goldfuss v. Davidson (1997),79 Ohio St.3d 116, the court's syllabus states:
 In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself.
This plainly is not such a case.
The plaintiffs maintain that the jury's verdict contained an inconsistency that should have been resolved before the court discharged the jury. According to the plaintiffs, it was inconsistent for the jury to apportion Hunsicker's liability at 25% but not award any damages to Marilyn Lathan, which award would ultimately be reduced so as to reflect Hunsicker's comparative fault. We do not agree.
Ohio Civil Rule 49(B) provides some guidance when inconsistencies occur. It states, in relevant part:
 When the general verdict and the [jury interrogatory] answers are consistent, the appropriate judgment upon the verdict and answers shall be entered pursuant to Rule 58. When one or more of the answers is inconsistent with the general verdict, judgment may be entered pursuant to Rule 58 in accordance with the answers, notwithstanding the general verdict, or the court may return the jury for further consideration of its answers and verdict or may order a new trial.
In McNees v. Cincinnati St. Ry. Co. (1949), 152 Ohio St. 269, the court held: "The answers of a jury to special interrogatories will not authorize a judgment different from that authorized by a general verdict, where such answers can be reconciled with the general verdict." Id., syllabus at para. 1. Klever v. Reid Bros.Express, Inc. (1949), 151 Ohio St. 467, instructs: "It is the duty of a court to harmonize, if possible, a special finding of a jury with its general verdict." Id., syllabus at para. 1. More recently, this court has said: "If possible, the reviewing court must adopt a view of the case that resolves any seeming inconsistency." Ragone v. Sentry Ins. Co. (1997), 121 Ohio App.3d 362,370. If the inconsistency cannot be reconciled, the court has discretion to select the appropriate relief under Civ.R. 49(B). Colvin v. Abbey's Restaurant, Inc. (1999), 85 Ohio St.3d 535.
In the case at bar, the plaintiffs say it was inconsistent for the jury to find Hunsicker 25% at fault and yet award no damages to Marilyn Lathan. We disagree. The jury may have simply found that Marilyn Lathan failed to prove that she sustained any compensable injuries as a proximate result of the collision. The jury could have reasonably found that the impact upon her vehicle was not significant. The jury may also have discredited Marilyn Lathan's injury claim because she did not report any injury at the scene, did not seek medical treatment until two days later when she reported for work, received all her medical care and treatment from her own employer, and there existed inconsistencies between what Marilyn Lathan claimed was injured and what her doctor said was treated. In accordance with the court's jury instructions, the general verdict returned against Marilyn Lathan's claim did not require the jury to answer interrogatories that might have excluded these possible interpretations. (Tr. 269-274.) We find no irreconcilable conflict, therefore, between the jury's general verdict against Marilyn Lathan and its apportionment of liability when the jury separately awarded the defendant a verdict on the counterclaim.
Moreover, the plaintiffs waived their right to complain about any inconsistency, because they failed to invoke Civ.R. 49(B) and accepted the jury's verdict without challenge or objection. InAvondet v. Blankenstein (1997), 118 Ohio App.3d 357, this court said:
 An objection to an inconsistent answer by a jury to an interrogatory is waived unless the party raises the objection prior to the jury's discharge. Cooper v. Metal Sales Mfg. Corp. (1995), 104 Ohio App.3d 34, 42; Greynolds v. Kurman (1993), 91 Ohio App.3d 389, 395; Midwest Specialties, Inc. v. Firestone Co.
(1988), 42 Ohio App.3d 6, 11; Haehnlein v. Henry
(1987), 41 Ohio App.3d 233, 234; Santill v. Gen. Elec. Co. (Apr. 4, 1991), Cuyahoga App. No. 58377, unreported, at 18, 1991 WL 45559. The policy reasons behind requiring an objection are "(1) to promote the efficiency of trials by permitting the reconciliation of inconsistencies without the need for a new presentation of evidence to a different trier of fact, and (2) to prevent jury shopping by litigants who might wait to object to an inconsistency until after the original jury is discharged." Greynolds, 91 Ohio App.3d at 395.
Avondet v. Blankenstein, supra, 118 Ohio App.3d at 368. See, also, Kennedy v. Fealko (1991), 75 Ohio App.3d 47.
After the court announced the jury's verdicts in this case, the court asked the parties' counsel whether there were any unresolved issues before the jury was excused; both parties said there were none. (Supp.Tr. 46-49.) The plaintiffs did not suggest that there was any inconsistency until they filed their motion for judgment notwithstanding the verdict, new trial, or further jury deliberations, after their jury had already been discharged. The plaintiffs' failure to raise the issue before the jury was discharged when any error could have been addressed must be considered as a waiver of the issue. "Any other decision would encourage jury shopping by litigants, who might preclude resubmission of the verdict merely by waiting to object until after the original jury is discharged." Midwest Specialties, Inc.v. Firestone Co., supra, 42 Ohio App.3d at 11 (quoted in Avondetv. Blankstein, supra, 118 Ohio App.3d at 369).
Because the jury's verdict was not inconsistent and because, in any event, by failing to raise the issue at trial plaintiffs waived their right to raise the issue on appeal, the trial court did not err in denying the plaintiffs' post-judgment motion. Nor do we see any legitimate reason to invoke the plain error doctrine in this case. The plaintiffs' first and third assignments of error are accordingly overruled.
Plaintiffs' second assignment of error contends
 II. THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANTS BY ADMITTING HEARSAY TESTIMONY OF NANCY PENNINGTON WHICH DEPRIVED THE APPELLANTS OF THEIR RIGHT TO CROSS-EXAMINATION OF AN OPPOSING WITNESS AND WHICH WENT BEYOND THE SCOPE OF REBUTTAL TESTIMONY PERMITTED UNDER EVIDENCE RULE 804(B)(5).
The plaintiffs complain that the court erred when it permitted Nancy Pennington to testify that John Hunsicker told her right after the accident that it was caused because Christopher Lathan cut in front of Hunsicker. The plaintiffs insist this was inadmissible hearsay evidence elicited during the defendant's case. The plaintiffs' assignment of error is not well taken.
Although Evid..R. 802 generally bars the admission of hearsay evidence, Evid.R. 804(B)(5) permits the admission of a deceased declarant's statement if "(a) the estate or personal representative of the decedent's estate * * * a party, and (b) the statement was made before the death * * *, and (c) the statement is offered to rebut testimony by an adverse party on a matter within the knowledge of the decedent * * *." As the Supreme Court of Ohio noted, Evid.R. 804(B)(5) "was promulgated to level the playing field: if the adverse party may testify, the decedent may testify from the grave through hearsay to rebut the testimony by the adverse party." Eberly v. A-P Controls, Inc.
(1991), 61 Ohio St.3d 27, 32.
In the case at hand, the plaintiffs say Nancy Pennington's testimony went beyond the rebuttal permitted by Evid.R. 804(B)(5). We do not agree. John Hunsicker's statement that Christopher Lathan abruptly cut left in front of Hunsicker's car was plainly in rebuttal of the plaintiffs' testimony that Hunsicker cut left and attempted to squeeze past the plaintiffs' car. Nothing in the record supports the plaintiffs' contention that this evidence went beyond the rebuttal that Evid.R. 804(B)(5) allows.
Moreover, the plaintiffs cannot complain now about the admission of this evidence for two reasons. First, the plaintiffs themselves elicited this evidence when they called Ms. Pennington as their first witness and, in cross-examining her pursuant to R.C. 2317.07, extensively reviewed with her the diagram John Hunsicker drew to explain how the accident occurred:
 Q. So where the accident appears on this, it just started to open up into the turn lane?
A. That's correct.
 Q. So, Mr. Lathan, from this diagram, was in front of this vehicle here?
A. He cut in front of it.
Q. Was he in front of it?
 A. I was not there, sir. I'm relating to you what my son told me.
 Q. I understand. But that is about what your son showed, the vehicle in front of his, correct? Isn't that what he showed you?
 A. Yes. It's cutting him off from one lane to another. You can see that.
(Tr. 35-36.)
If the admission of John Hunsicker's statement were erroneous, the plaintiffs invited the error by calling the estate's representative on cross-examination and eliciting the testimony from her. Under similar circumstances, the court in Center RidgeGanley, Inc. v. Stinn (1987), 31 Ohio St.3d 310, said: "Under the `invited error' doctrine, a party will not be permitted to take advantage of an error which he himself invited or induced the trial court to make." Id. at 313 (quoting Lester v. Leuck (1943),142 Ohio St. 91, paragraph one of the syllabus) (internal punctuation omitted)
Second, the plaintiffs did not object to this evidence when the defendant elicited similar testimony from Ms. Pennington during the defendant's case. (Tr. 205-206.) The plaintiffs' failure to object to the evidence at trial waived their right to challenge its admissibility on appeal. See Gollihue v. Consolidated RailCorp. (1997), 120 Ohio App.3d 378; Cunningham v. Goodyear Tire Rubber Co. (1995), 104 Ohio App.3d 385.
In any event, the admission or exclusion of evidence rests within the sound discretion of the trial court and a reviewing court may reverse only upon a showing that discretion was abused. See Peters v. State Lottery Comm. (1992), 63 Ohio St.3d 296, 299;Frye v. Weber Sons Service Repair, Inc. (1998), 125 Ohio App.3d 507,516. We find no abuse of discretion here. The plaintiffs' second assignment of error is accordingly overruled.
The judgment is affirmed.
It is ordered that appellee recover of appellants her costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANN DYKE, P.J., and MICHAEL J., CORRIGAN, J., CONCUR.
 _______________ DIANE KARPINSKI JUDGE
[1] John Hunsicker died from an unrelated illness on March 4, 1996. Mr. Hunsicker's mother, Nancy Pennington, was appointed administratrix of Hunsicker's estate and was substituted as defendant-appellee herein.