DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment on a verdict issued by the Erie County Court of Common Pleas in a trespass/nuisance case. Because we conclude that the trial court acted in conformity with Civ.R. 49(B) in ordering judgment on an interrogatory which conflicted with a general verdict, we affirm.
 {¶ 2} Appellee Theodore Terry, through his closely held corporation, appellee Sunrise Point, Ltd., owns Sunrise Point Inn, an eight-room hotel on the southeast shore of Kelleys Island in Lake Erie. Adjacent, and slightly downgrade from appellee's hotel, is a marina and adjoining lots owned by appellant, Capital Control, Inc. Capital Control is owned by James Palladino who owns several other enterprises on Kelleys Island.
 {¶ 3} On May 5, 1999, Palladino sent an employee to the lots adjacent to appellee's hotel to clear growth which was obstructing visibility on a curve of a nearby road. According to the employee, he noted the foul odor of sewage. When the employee attempted to cut the brush on the lot, his equipment became mired in black ooze.
 {¶ 4} The employee contacted Palladino who eventually ordered heavy equipment onto the site to excavate the soil he believed was contaminated. After the soil was removed, Palladino had the hole partially filled with crushed limestone, then dressed with topsoil. The cost, appellant asserted, was $148,320.
 {¶ 5} Appellant sued appellees, alleging trespass and nuisance. Appellant claimed that appellees had deliberately pumped raw sewage from the hotel septic system onto appellant's property. The resulting contamination, appellant maintained, was the reason for appellant's expenses in drying the lots.[1]
Appellees denied liability and the matter proceeded to trial before a jury.
 {¶ 6} At trial, Palladino and his employee both testified to the odor and wetness of the lots at issue. Both also reported seeing a black hose extending from the septic vault on appellees' property toward appellant's land.
 {¶ 7} Appellant also presented testimony from an environmental specialist who conducted a soil test in that area on June 3, 1999, finding a high count of fecal coliform bacteria. Appellant additionally offered testimony from a couple who had previously worked for appellees at the hotel. They testified that the hotel septic system had been problematic for some time.
 {¶ 8} Appellee Terry testified for the defense, conceding that the hotel septic system had malfunctioned several times over the years. Appellee Terry also stated that on a few occasions, when the main pump failed, he pumped overflow through a hose. He denied, however, directing the flow onto appellant's property, although he conceded some of the effluent could have been carried there by gravity.
 {¶ 9} Appellees also presented testimony from an Ohio Environmental Protection Agency inspector, who inspected appellant's property at appellant's request. The inspector was on the property only a few days after appellant's employee first reported the land was mired in stench. According to the OEPA inspector, he found no septic odor, nor did he find evidence that septic waste had been dumped there.
 {¶ 10} With respect to appellant's assertion that appellees' sewage was the source of the wetness of the land, appellees presented testimony from the prior owner of the hotel who reported that in the 1970s the property was always wet. Indeed, the former owner said that, at that time, his children would go onto the property with nets to catch fish and frogs. Appellees also called a geologist with the Ohio Department of Natural Resources who brought aerial pictures of the property from 1973 and 1986 which he testified showed a pool of water on appellant's lots in 1973 and vegetation consistent with wetlands in 1986.
 {¶ 11} Both Terry and Palladino testified that the two of them had engaged in other disputes over the course of a number of years.
 {¶ 12} On closing, appellees pointed out that pictures of the completed remediation project introduced by appellant bore a photograph processing date of May 18, 1999, two weeks prior to the June 3, 1999 soil tests which reportedly found fecal bacteria. Appellees argued that this discrepancy brought into question the validity of the only physical evidence appellant produced to show contamination. Moreover, appellees argued, the lawsuit was nothing more than another chapter in a continuing feud between Palladino and Terry: this time an attempt by Palladino to get the court to order Terry to pay for land reclamation that needed to be done anyway.
 {¶ 13} Following closing arguments, the matter was submitted to the jury on instructions relating to nuisance and trespass. During deliberations, the jury asked the court: "May we just say that Mr. Terry owes Palladino the cost of: new septic system, installation * * * material? Because Mr. Terry should have done it from the beginning." The jury also asked, "Can we award punitive damages without finding [appellees] guilty of causing damage or doing so with malice?" The court answered the first question, directing the jury to assess whatever damages it found as a dollar amount. The court responded to the second question by instructing on nominal damages.
 {¶ 14} Eventually, the jury returned a general verdict in favor of appellant, but found that appellant was, "* * * entitled to `no money' ($`0') as compensatory damages." Nevertheless, in the same verdict, the jury awarded $20,000 punitive damages and attorney fees to appellant.
 {¶ 15} To the accompanying interrogatories, the jury responded as follows:
 {¶ 16} "(A) Do you find that the [appellees] committed a trespass or created a nuisance on [appellant's] property? `Yes.' * * * (B) If you find that the [appellees] committed a trespass or created a nuisance, did that proximately cause any damage to [appellant]? `Yes.' * * * (C) Do you find by clear and convincing evidence that [appellant] suffered actual damages and that [appellees] acted with actual malice? `No.'"
 {¶ 17} On receiving the verdict, the court dismissed the jury and ordered a hearing on whether or how to enter judgment on the verdict. Following the hearing, the trial court concluded that the jury had found that appellant suffered no damages and that, while appellees had been a bad neighbor by not fixing its septic system, they had not acted maliciously. Absent malice or damages, the trial court found, punitive damages and attorney fees were unwarranted. On these findings, the court entered judgment for appellant "for no damages and costs."
 {¶ 18} From this judgment, appellant now brings this appeal, setting forth the following five assignments of error:
 {¶ 19} "First assignment of error: The trial court erred in failing to award Capital Control one hundred forty-eight thousand three hundred twenty dollars in compensatory damages.
 {¶ 20} "Second assignment of error: The trial court erred in failing to award capital control nominal damages.
 {¶ 21} "Third assignment of error: The trial court erred in failing to award Capital Control twenty thousand dollars in punitive damages, plus attorneys' fees, in accordance with the jury's verdict.
 {¶ 22} "Fourth assignment of error: The trial court erred in permitting appellees to use a surprise expert witness in violation of Loc.R. 15.01(B).
 {¶ 23} "Fifth assignment of error: The trial court erred in failing to order a new trial."
 Surprise Witness {¶ 24} We shall begin with appellant's fourth assignment of error.
 {¶ 25} Although, prior to trial, appellees disclosed the name of the Ohio Department of Natural Resources geologist who testified at trial, appellees objected to this testimony beyond identifying the 1973 and 1986 aerial photographs taken of the property. On appeal, appellant argued that it was his understanding that the geologist was to be called for authentication purposes only and that to permit him to testify beyond that scope would be the equivalent of presenting a surprise witness and would be unfair to appellant. The trial court overruled appellant's objection, characterizing the confusion about the geologist's role as a "mixup" rather than a deliberate attempt to "play fast and loose with the rules[.]" The court concluded that the sanction of exclusion, "* * * would be far in excess of any violation of the rules if there were one." On appeal, appellant argued that the testimony beyond photo identification violates a trial court local rule prohibiting expert testimony absent a report of the expert's prospective testimony served on opposing counsel two weeks prior to trial.
 {¶ 26} The admission of evidence and the general conduct of a trial rests in the sound discretion of the trial court. O'Brienv. Angley (1980), 63 Ohio St.2d 159, 163; Booksbaum v.Christian (1936), 21 Ohio Law Abs. 129. Rulings within the discretion of the court will not be reversed on appeal absent an abuse of discretion. An "abuse of discretion" is more than an error of law or judgment, the term implies that the court's attitude is unreasonable, arbitrary or unconscionable. Landis v.Grange Mut. Ins. Co. (1998), 82 Ohio St.3d 339, 342.
 {¶ 27} Appellant did not invoke the local rule in making his objection at trial. Nonetheless, even if he had, the court would have acted within its discretion in overruling the objection. As the court noted, the infraction, if any, was not of such magnitude as to deny appellees a witness. Moreover, in hindsight, much of the testimony to which appellant objected was cumulative.
 {¶ 28} Accordingly, appellant's fourth assignment of error is not well-taken.
 Civ.R. 49(B) {¶ 29} The remainder of appellant's assignments of error all go to the trial court's treatment of the verdict and interrogatories and will be discussed together.
 {¶ 30} Appellant contends that the interrogatories and the verdict were inconsistent and the trial court should have responded to this inconsistency by reforming the verdict to award what it asserts were unrefuted damages of $148,320. Alternatively, appellant insists, the court should have, at the minimum, awarded it nominal compensatory damages and the punitive damages and attorney fees that the jury awarded. Failing the implementation of either of these remedies, appellant maintains it should have been granted a new trial.
 {¶ 31} In material part, Civ.R. 49(B) provides, with respect to interrogatories:
 {¶ 32} "When the general verdict and the answers are consistent, the appropriate judgment upon the verdict and answers shall be entered pursuant to Rule 58. When one or more of the answers is inconsistent with the general verdict, judgment may be entered pursuant to Rule 58 in accordance with the answers, notwithstanding the general verdict, or the court may return the jury for further consideration of its answers and verdict or may order a new trial."
 {¶ 33} The purpose of using interrogatories is to test the general verdict. Colvin v. Abbey's Restaurant, Inc. (1999),85 Ohio St.3d 535, 537. Civ.R. 49(B) provides that, in the event of an inconsistency between the general verdict and the answers to accompanying interrogatories, the court may, in its discretion: (1) enter judgment on the interrogatories; (2) bring back the jury for further consideration; or order a new trial. Id. at 538.
 {¶ 34} Before the court applies the rule, however, it must be satisfied that apparent inconsistencies between interrogatory and verdict are not reconcilable. Ragone v. Sentry Ins. Co. (1997),121 Ohio App.3d 362, 370. Civ.R. 49(B) applies not to inconsistencies between the interrogatories, but between interrogatories and the general verdict. Id., citing Thornton v.Parker (1995), 100 Ohio App.3d 743, 757.
 {¶ 35} In this matter, the jury rendered a general verdict for appellant, but awarded no compensatory damages.
 {¶ 36} In Interrogatory "A," the jury found that appellees had "committed a trespass or created a nuisance." This does not conflict in any way with the general verdict.
 {¶ 37} In Interrogatory "B," the jury found that appellees' trespass or nuisance caused damage to appellant. This is not in conflict with a general verdict for appellant, but seems at odds with the jury's refusal to award compensatory damages. As the trial court pointed out, however, it was appellant's responsibility to prove damages. On the evidence presented at trial, the jury could have concluded that while, indeed, appellees had septic problems which should have been addressed, appellant's demand for more than $100,000 in damages was too exaggerated to be believable.
 {¶ 38} Moreover, in the court's instruction on nominal damages, it charged that if the jury found a nuisance it "may
award" nominal damages, See Blevin v. Sorrell (1990),68 Ohio App.3d 665, 669, but, if it found trespass, it "must award" nominal damages. Allstate Fire Ins. v. Singler (1966),14 Ohio St.2d 27, 29. (Emphasis added.) Consequently, if the jury found nuisance, but no trespass, it may have elected to award no nominal damages. Therefore, Interrogatory "B" does not conflict with the general verdict for appellant, but no award of compensatory damages.
 {¶ 39} Finally, Interrogatory "C" reflects a jury finding that appellant failed to prove either actual damage or malice.
 {¶ 40} As discussed above, a finding of no damages is consistent with the general verdict for appellant and a denial of compensatory damages. It is, however, inconsistent with a general verdict award of punitive damages and attorney fees. Punitive damages, including attorney fees, may not be awarded absent actual damages. Richard v. Hunter (1949), 151 Ohio St. 185, at paragraph one of the syllabus; Columbus Finance v. Howard
(1975), 42 Ohio St.2d 178, 183. Neither may punitive damages, including attorney fees, be awarded absent fraud, malice or insult. Preston v. Murty (1987), 32 Ohio St.3d 334.
 {¶ 41} Finding an inconsistency between an interrogatory and one or more general verdict findings, Civ.R. 49(B) vests the trial court with discretion to either enter judgment on the interrogatory answer or order a new trial. Matters within the court's discretion will not be reversed unless there is an abuse of discretion. An abuse of discretion is more than an error of judgment or a mistake of law, the term connotes that the court's attitude is arbitrary, unreasonable or unconscionable. Blakemorev. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 42} Here, the court elected to enter judgment on the interrogatory answers. This decision is in conformity with the rule and the law and is reasonable in these circumstances. Accordingly, the remainder of appellant's assignments of error are not well-taken.
 {¶ 43} On consideration whereof, the judgment of the Erie County Court of Common Pleas is affirmed. Costs to appellant in conformity with App.R. 24.
Judgment affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, P.J., Lanzinger, J., Singer, J., Concur.
[1] An additional encroachment claim resulted in a directed verdict for appellees and is not at issue in this appeal.